IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ISREAL,  ) No. C 09-04233 CW (PR)
                 )
   Petitioner,   ) ORDER DENYING PETITION FOR WRIT OF
                 ) HABEAS CORPUS; DENYING CERTIFICATE
   v.            ) OF APPEALABILITY
                 )
A. HEDGPETH, Warden, )
                 )
   Respondent.   )
_____)

## INTRODUCTION

Petitioner Michael Isreal, a state prisoner incarcerated at High Desert State Prison, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent Hedgpeth filed an answer in which he requests that the Court either dismiss the petition as untimely, or, in the alternative, deny the petition on the merits.  Petitioner then filed a traverse.  Having considered the papers submitted, the Court denies the petition on the merits, and thus finds it unnecessary to rule on timeliness.

## BACKGROUND

In 1979, an Alameda County Superior Court jury convicted Petitioner of first degree murder.  He was sentenced to twenty-five years to life in state prison.

Petitioner had a parole suitability hearing originally scheduled for August 12, 2005; however, it was cancelled on July 26, 2005 and postponed to a later date.  (Resp't Ex. 3 at 10; Pet, Ex. A.)  One year later, on June 28, 2006, Petitioner's parole suitability hearing scheduled for August 1, 2006 was similarly cancelled and postponed to a later date.  (Resp't Ex. 3 at 13; Pet,

Ex. B.)  On August 1, 2007, the Board of Parole Hearings (Board) found Petitioner unsuitable for parole on the grounds that the circumstances of his commitment offense indicated that, if released from prison, he would pose an unreasonable risk of danger to society, or a threat to public safety, or both.  Petitioner was denied parole for five years, and he will next be eligible for parole in 2012.

On November 29, 2007, the Board's decision became final.

On July 17, 2008,[1] Petitioner filed a state habeas petition in the Monterey County Superior Court.  (Resp't Ex. 1 at 1, 4.)  That petition was transferred to the Alameda County Superior Court and was stamped as "FILED" in that court on September 9, 2008.  (Id. at 1.)  In that petition, Petitioner alleged that the Board violated his due process rights by failing to give him two years of credit when it denied him parole for five years on August 1, 2007.  (Id. at 3.)  Petitioner claimed that the five-year denial was "illegal" and that his next scheduled parole suitability hearing should be in "August of 2010 instead of 2012" because the Board postponed it twice.  (Id.)

On October 23, 2008, the Alameda County Superior Court denied the petition for failure to state a prima facie case for relief,

---

[1] A pro se federal or state habeas petition is deemed filed on the date it is delivered to prison authorities for mailing.  See Saffold v. Newland, 250 F.3d 1262, 1268 (9th Cir. 2001), vacated and remanded on other grounds, Carey v. Saffold, 536 U.S. 214 (2002) (holding that a federal or state habeas petition is deemed filed on the date the prisoner submits it to prison authorities for mailing, rather than on the date it is received by the court).  July 17, 2008 is the date the state petition was signed and the earliest date that the petition could have been delivered to prison authorities for mailing.  For the purposes of this discussion, the Court deems that the petition was filed on that date.

stating:

> The petition for writ of habeas corpus ("the Petition") filed on September 9, 2008 is **DENIED** for failure to state a prima facie case for relief.  Although Petitioner has not provided the court with a complete record (the transcript of the parole suitability hearing was not attached to the Petition), Petitioner provides sufficient documentation to allow the court's review of the merits of the claim.

(Resp't Ex. 2 at 1 (emphasis in original).)

On December 1, 2008, Petitioner filed a habeas petition in the California Court of Appeal, Sixth Appellate District.  The petition was stamped as "FILED" by the Clerk of the Court in the Sixth District three days later, on December 4, 2008.[2]  (Resp't Ex. 3 at 1.)  That petition was denied without prejudice and recommended for refiling with the California Court of Appeal, First Appellate District, on December 9, 2008.  (Id. at 26.)  Petitioner then refiled the petition in the First District on January 20, 2009.  (Id. at 1.)  That petition was summarily denied on February 4, 2009.  (Resp't Ex. 4 at 1.)

On March 24, 2009, Petitioner filed a habeas petition in the California Supreme Court, and that petition was summarily denied on August 12, 2009.  (Resp't Exs. 5, 6.)

On September 8, 2009,[3] Petitioner filed the present federal habeas petition, alleging the same due process violation raised in

---

[2] The stamped filing date on the appellate court petition filed in the Sixth District is faded; therefore, this Court obtained the filing date from the state court's official online database.

[3] September 8, 2009 is the date the federal petition was signed and the earliest date that it could have been delivered to prison authorities for mailing; therefore, it will be deemed filed on that date.  See Saffold, 250 F.3d at 1268.

3

his state habeas petitions.[4]

DISCUSSION

I.  Timeliness

The Antiterrorism and Effective Death Penalty Act (AEDPA) became law on April 24, 1996 and imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners.  Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented the petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(A)-(D).  However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation."  Id. § 2244(d)(2).

---

[4] Aside from stating his due process claim, the "Grounds for Relief" section of his federal petition is blank.  Instead, Petitioner incorporates the supporting facts and authorities relevant to his due process claim from his attached state supreme court petition; therefore, in this Order the Court will cite to the page numbers and exhibits from his attached state supreme court petition.

The one-year statute of limitations also applies to habeas petitions that challenge administrative decisions. The Ninth Circuit held in <u>Shelby v. Bartlett</u>, 391 F.3d 1061 (9th Cir. 2004), that section 2244's one-year time limit applies to all habeas petitions filed by persons in custody pursuant to a state court judgment. In cases challenging administrative decisions, the limitations period is determined by section 2244(d)(1)(D), which states that the limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." <u>Id.</u> at 1066 (quoting 28 U.S.C. § 2244(d)(1)(D)). For an administrative decision, such as those by the Board, this typically means the day following notice to the petitioner of the decision. <u>Id.</u>; <u>see also</u> <u>Redd v. McGrath</u>, 343 F.3d 1077, 1084 (9th Cir. 2003).

In this case, the Board's denial became final on November 29, 2007. The limitations period began to run the following day, on November 30, 2007. Accordingly, Petitioner was required to file his federal habeas petition no later than November 30, 2008. <u>See</u> 28 U.S.C. § 2244(d). Therefore, his petition filed on September 8, 2009 -- nearly one year after the limitations period had expired -- is untimely absent statutory tolling.

The present petition may nonetheless be timely if the limitations period was tolled under 28 U.S.C. § 2244(d)(2) for a substantial period of time. As noted earlier, AEDPA's one-year limitations period is tolled under § 2244(d)(2) for "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment

5

or claim is pending." 28 U.S.C. § 2244(d)(2). The limitations period is also tolled during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court. Carey v. Saffold, 536 U.S. 214, 223 (2002). In California, where prisoners generally use the state's original writ system, this means that the limitations period remains tolled during the intervals between a state court's disposition of an original state habeas petition and the filing of the next original state habeas petition in a higher court, provided the prisoner did not delay unreasonably in seeking review in the higher court. See id. at 220-25.

Where a petitioner waits months to file a habeas petition in a higher court, a federal court must later determine whether the petitioner "delayed 'unreasonably'" in seeking higher state court review. Carey, 536 U.S. at 225. If a petitioner delayed unreasonably, the application would no longer have been "pending" during the period at issue. Id. If the state court does not clearly rule on a petitioner's delay, as in the present case, the federal court must evaluate all "relevant considerations" and independently determine whether the delay was "unreasonable." Id. at 226.

The Supreme Court held that a determination of unreasonable delay is particularly difficult to make in California: "The fact that California's timeliness standard is general rather than precise may make it more difficult for federal courts to determine just when a review application . . . comes too late." Id. at 223. The Supreme Court held, however, that California's appellate system

6

could be treated similarly to those in other states, which measure delays "in terms of a determinate time period, such as 30 or 60 days." Evans v. Chavis, 546 U.S. 189, 192 (2006). In other words, "California's 'reasonable time' standard [should] not lead to filing delays substantially longer than those in States with determinate timeliness rules." Id. at 200 (citing Carey, 536 U.S. at 222-23). Based on the Supreme Court's reference to the usual thirty or sixty day periods provided by states with determinate deadlines, a delay of sixty days would likely be reasonable. On the other hand, a longer delay of six months would likely be unreasonable: "Six months is far longer than the 'short period[s] of time,' 30 to 60 days, that most States provide for filing an appeal to the state supreme court." Id. at 201.

The language in Evans referred to above -- that most states find thirty to sixty days to be reasonable -- seems to imply that delays are reasonable only if they are roughly between thirty to sixty days. More conclusive is the Supreme Court's statement that in determining whether a delay is reasonable "the [Ninth] Circuit must keep in mind that, in Saffold, we held that timely filings in California fell within the federal tolling provision on the assumption that California law in this respect did not differ significantly from the laws of other states, i.e., that California's 'reasonable time' standard would not lead to filing delays substantially longer than those in States with determinate timeliness rules." Evans, 546 U.S. at 199-200 (citing Carey, 536 U.S. at 222-23). "California, of course, remains free to tell us if, in this respect, we were wrong." Evans, 546 U.S. at 200.

7

Respondent argues that Petitioner filed his state superior court petition 284 days after the Board's decision became final. Respondent's calculation considers the filing date as September 9, 2008, the date the superior court petition was received in the Alameda County Superior Court, instead of the date that the petition was filed in the Monterey County Superior Court.

Respondent also argues that the eighty-nine day gap between the superior court's denial and Petitioner filing his appellate court petition in the First District was a period of "unreasonable delay" and that the limitations period should not be tolled for that period. Respondent's calculation of an eighty-nine day gap does not credit the date that Petitioner's appellate petition was filed in the wrong appellate district. However, as noted above, the Court finds it unnecessary to rule on Respondent's request to dismiss the federal petition as untimely because the petition fails on the merits.

II.  The Merits of the Petition

Petitioner's due process claim arises out of the 2005 and 2006 postponements of his parole hearings. Specifically, Petitioner claims that he "does not contest the five-year denial, which the Board was entitled to do, so long as it gave Petitioner credit for it's [sic] two years of postponements . . . which would schedule Petitioner['s] next parole hearing for 2010 instead of 2012." (Pet. at 3.)

A.   Legal Standard

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of

8

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). The first prong applies both to questions of law and to mixed questions of law and fact, id. at 407-09, and the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if the "state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

9

erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). In the present case, the Alameda County Superior Court is the highest court that addressed Petitioner's due process claim.

B.  Analysis

The state superior court found, after reviewing the merits of his due process claim, that Petitioner "fail[ed] to state a prima facie case for relief." (Resp't Ex. 2 at 1.)  That court's decision denying Petitioner's claim was based on a legal determination concerning the sufficiency of his legal claim, not on any factual determinations.

In his federal petition, Petitioner states, "All postponements were due to deficiency caused by Respondent actions and/or lack of process[es] due." (Pet. at 3 (alteration in original).) Section 2253 of Title 15 of the California Code of Regulations, which authorizes the Board to postpone subsequent parole suitability hearings, provides, in pertinent part:

> (a) General.  The rights and interests of all persons properly appearing before a board life parole consideration hearing are best served when hearings are conducted as scheduled.  Occasional circumstances may require the delay of a scheduled hearing.  It is the intention of the board to recognize the need and

10

>       desirability to occasionally delay a scheduled hearing
>       and to authorize said delays through a process of
>       voluntary waiver or stipulation of unsuitability or to
>       postpone or continue a scheduled life parole
>       consideration hearing.

Cal. Code Regs. tit. 15, § 2253(a).  To the extent Petitioner contends the Board improperly delayed his parole suitability hearings in violation of state law, he asserts no cognizable claim for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

To show a constitutional violation, Petitioner must prove that any alleged delay was both unreasonable and prejudicial.  See United States v. Santana, 526 F.3d 1257, 1260 (9th Cir. 2008); Meador v. Knowles, 990 F.2d 503, 506 (9th Cir. 1993); Camacho v. White, 918 F.2d 74, 79 (9th Cir. 1990); Hopper v. United States Parole Comm'n, 702 F.2d 842, 845 (9th Cir. 1983).  The Court need not determine whether the delay was unreasonable, because Petitioner has failed to demonstrate any non-speculative possibility of prejudice.

First, the Board did not abrogate Petitioner's future right to parole hearings, or even deny them indefinitely but rather postponed his scheduled parole hearing on two occasions.  The record shows that Petitioner was informed in writing about the 2005 and 2006 postponements, and he was advised that a new hearing would be scheduled.  (Pet., Exs. A, B.)  Petitioner's parole suitability hearing eventually took place on August 1, 2007, and he was afforded an opportunity to be heard in accordance with due process before he was denied parole.  Petitioner alleges no facts remotely suggesting that the delays in 2005 and 2006 affected the merits of

11

the Board's August 1, 2007 decision deeming him unsuitable for parole. Nothing indicates the delays had any effect on the standards for determining suitability.

Second, Petitioner claims that the Board should have given him "credit for it's [sic] two years of postponements." (Pet. at 3.) As mentioned above, Petitioner argues that he should have received a three-year denial instead of a five-year denial. Petitioner may be arguing that the repeated delays in scheduling his parole hearing have resulted in additional time for which no credit will ever be applied, thereby violating due process. However, his argument is unavailing. Even if, at some future hearing, the Board were to find Petitioner suitable for parole, his ultimate release date would not be fixed by reference to the hearing date, but rather would be a product of the Board's discretion, taking into account the "matrix" of suggested base terms set forth in state prison regulations, circumstances in aggravation and mitigation, and adjustments for enhancements or other offenses, and reduced by any post-conviction credit awarded by the Board. See Cal. Code Regs. tit. 15, §§ 2403-2411. Petitioner's suggestion that the alleged delays might cause some future suitability determination to occur later than it otherwise would have occurred is far too speculative to show the requisite prejudice. See California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (2000) (rejecting Ex Post Facto challenge to amendment decreasing frequency of California parole suitability hearings; amendment "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for

12

covered crimes"). Moreover, any suggestion that the delay might cause the actual release date (following some future suitability finding or future grant of habeas relief) to occur later than it otherwise would have occurred is even more speculative. Thus, no due process violation occurred because Petitioner has failed to show any prejudice from the alleged delays in 2005 and 2006. It follows that the state courts' rejection of Petitioner's due process claim was not contrary to, or an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court. See 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to habeas relief.

Accordingly, the Court GRANTS Respondent's request to deny the petition on the merits; the petition is DENIED.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Court does not rule on Respondent's request to dismiss the petition as untimely.

2. Respondent's alternative request to deny the petition on the merits is GRANTED, and the petition for a writ of habeas corpus is DENIED.

3. A certificate of appealability is DENIED. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

4. The Clerk of the Court shall enter judgment in favor of

13

Respondent and close the file.

    IT IS SO ORDERED.

Dated: 3/14/2012

                              CLAUDIA WILKEN
                              United States District Judge